WALLACE, JUDGE:
The claimant, Black Rock Contracting, Inc., sometimes hereinafter referred to as Black Rock, filed its claim in the amount of $141,644.18 against .the respondent Department of Highways for damages allegedly caused by:
*190 1. A verbal shut-down order issued by respondent’s employees.
2. Damages for equipment time lost due to interference with its field of operations caused by the failure of American Telephone and Telegraph Company to remove an overhead cable within the time prescribed by the contract.
The claimant was the successful bidder on a certain project of the respondent in Doddridge County, West Virginia, known as Project APD 282 (61).
In preparation for the making and presentation of the bid proposal to the respondent, the claimant relied on information contained in plans prepared by the respondent and also the requirements of the 1960 Standard Specifications and Supplemental Specifications of October, 1965.
There were certain utilities existing on the job site which had to be removed before the project could be completed: On page two of the contract there was an attached sheet entitled “Status of Utilities”. The first paragraph of this sheet is entitled “The following dates for completion of utility relocations are estimated dates and actual completion may vary as much as thirty days.”
One of the utilities, American Telephone and Telegraph Company, hereinafter referred to as AT&T, had a relocation date of September 30, 1969 and in accordance with information furnished the claimant it was considered that the AT&T lines would be removed by that date or not more than thirty days thereafter.
Black Rock relied on this information in making its bid and claims the increased costs incurred were caused by the failure of AT&T to remove its lines.
The claimant started work on the project in October, 1969. On October 30 a representative of AT&T requested the claimant to suspend its operations for fear that blasting would damage its lines. This request was refused but a verbal shut-down order was issued by the respondent at the request of AT&T. The job was suspended from bctobey 30,1969 through INIovember 3, 1969 when it was determined that the respondent had no authority to shut down the operation. As a result the claimant and the respondent stipulated this portion of the claim for $6,884.50.
Since the matter of the verbal shut-down order was settled by the parties, this opinion will concern itself with the alleged claim for damages for equipment time lost.
*191 There were two cables involved in this construction, one an AP overhead cable, the other a coaxial underground cable. Both cables were for interstate use and of great importance in the operations of AT&T.
The underground cable was never moved. After the contract was let it was determined that the excavations and fills were not going to be such as would require its removal.
The contractor continued to work and claimed that its work was limited due to the cables not being removed. This restricted the size of shot to be used for its blasting operations, .thus limiting the amount of material that could be loosened, and. removed. The contractor had to work over the underground cable and under the overhead cable.
In order to complete the project, the claimant had to remove rock and fill material from each end of the job site. A rock blanket had to be laid in the fill areas and then be covered by dirt and fill material. The claimant maintains that it was not able to move sufficient material at any one time, thus limiting its operation.
The overhead cable was located at a point where fill material was to be dumped if they had been able to form a base. To continue at this spot without removal of the cable would result in the burial of the cable. After complaint by the contractor, the respondent paid extra compensation to AT&T to set a higher pole in the area. Two small poles were replaced by a fifty-foot pole so the claimant could haul under the cable. This however was not sufficient to allow full operation by the claimant.
The claimant maintains that the delay resulting in the failure of AT&T to remove the lines caused & large quantify of expensive equipment to set idle day after day- accumulating rental cost's and costs normally accruing to claimant’s own equipment when idle. This continued until February 22, 1970 when the cable was relocated.
The respondent maintains that this case should be governed by the decision in the Tri-State Stone Corporation vs. State Road Commission, 9 Ct. Cl. 90 (1972), wherein this Court held that the contractor in making a bid must také into consideration the removal of utilities and assume the risk. The claimant’s position is that this case differs from the Tri-State Stone case in that Page two of the contract document lists the approximate removal dates for certain utilities, among them AT&T, and states the removal date *192 will not vary more than 30 days. The claimant alleges that in making its bid it relied on these dates and bid accordingly. Counsel for the respondent argued that there was no difference between the two cases. Upon inquiry it was stated that Page two in the contract document was there to satisfy a Federal Highway Administration requirement pertaining to the removal of utilities. This Court in its pre-trial order entered oh March 31,“1'9'76 held that at that time this claim could be distinguished from the factual situation presented in the Tri-State Stone case. After hearing the testimony, the Court is of opinion that this case is distinguishable from the Tri-State Stone case for the reason that the removal dates for utilities are made certain by the contract provisions and that the contractor was led to rely upon them.
The respondent maintains that this claim has no merit before the Court because it is governed by the Rules and Regulations of the respondent and by the 1960 Standard Specifications which are a part of the contract. The specifications provide that in the event any misunderstanding arises as to the intent or meaning of the provisions of the contract, then it is the duty of the Commissioner of Highways to make a determination and decision, which decision shall be final and conclusive. The Commissioner, in this case, made the decision that the claimant was not entitled to additional compensation. However, in the payment to the claimant of the final estimate on this contract, it was made subject to the right of the claimant to file its claim-before this Court.
During the course of the hearing of this case there were several motions made by the respondent which were not disposed of but taken under advisement. There were two motions to strike Exhibit 1 and one to strike the testimony of the witness Jarvis and Exhibit 7. After reviewing all of the testimony and evidence, these three motions are hereby overruled.
At the close of the claimant’s testimony the Court took under advisement the respondent’s motion to strike all of claimant’s testimony and disallow this claim. The motion renewed previous motions and cited further grounds which were that the case was not proved by a preponderance of the evidence and that the Commissioner of Highways has under the provisions of the Standard Specifications already determined there is no claim. This motion was renewed at the end of the hearing. The Court feels that there is sufficient evidence to warrant a finding on the merits and overrules the motions to strike.
*193 Although the Court has ruled on the motions, it feels that some comment should be made in this decision pertaining to the theory that the Highway Commissioner’s ruling in this case is final.
This Court was created for the express purpose to hear and determine cases which but for the constitutional immunity of the State from suit could be maintained in the regular courts of the State and in which there is a moral obligation of the State to pay any such claim. Granted the 1960 Standard Specifications provide that the finding of the Commissioner is final, this Court does not agree that the provisions prohibits a proceeding in this Court to determine what in equity and good conscience is a moral obligation of the State.
The claimant bases the amount of its claim on its daily equipment records which show the days on which equipment is worked, when idle, and the cost attributed to each particular piece of equipment. However, the Court is not satisfied that the claimant has proved by a preponderance of the evidence that each piece of equipment was idled each day claimed by AT&T’s failure to remove its line. There is no doubt that the AT&T line hampered and delayed the work and the claimant should be compensated but not to the extent claimed.
The claimant continued to increase the amount of equipment on the job site and at the same time complained that the work was being impeded by the failure of AT&T to remove its cable. Claimant’s witness testified that it was necessary to bring more equipment on the job site even though it was not to be used immediately because they had to get it when available.
The stockpiling of equipment is a matter of judgment and not the responsibility of the respondent. Claimant’s testimony reveals that it had no other job pending and yet claimed compensation for its own idle equipment stored on the job site when it had no immediate use for it elsewhere.
The job was actually completed ahead of schedule but not as soon as expected. It was stipulated in the record that no activity was anticipated by the claimant between January 1,1970 and April 30, 1970, yet the claimant claims extra compensation through January 30, 1970.
In the course of the hearing it was brought out that the equipment records did not take into account certain days that the *194 job was shut down due to weather conditions. The claimant conceded this and accordingly reduced the amount of its claim.
The Court is of the opinion that the claimant in submitting its bid relied on the removal dates for the utilities in the contract and that the claimant is entitled to extra compensation caused by the delay in the removal of the AT&T cable, and therefore an award is made to the claimant in the amount of $23,874.59 in addition to the stipulated amount of $6,884.50 agreed to by the parties.
Award of $30,759.09.